BURTON KRAVETTE and CARYL KRAVETTE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kravette v. Commissioner
Docket No. 25931-84.
United States Tax Court
T.C. Memo 1987-124; 1987 Tax Ct. Memo LEXIS 120; 53 T.C.M. (CCH) 310; T.C.M. (RIA) 87124; March 5, 1987. Burton Kravette, pro se. Gail Berruti, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency in petitioners' 1982 joint Federal income tax in the amount of $19,089.54. The issues presented are (1) whether petitioners' claimed business expenses are ordinary and necessary expenses under section 162; [1] *121 (2) whether the expenses have been adequately substantiated under sections 162 and 274(d); and (3) whether petitioners are entitled to a deduction for the expenses of a home office under section 280A. FINDINGS OF FACT At the time of filing of the petition in this case, petitioners resided in Bayside, New York. Mr. Kravette ("Kravette") was an outside salesman for Minolta Business Systems ("MBS") during part of 1982 and for Minolta Corporation ("MC") for the remainder of 1982. [2] MBS is a subsidiary of MC and was organized to be a dealer of Minolta copy machines. Kravette earned total wages of $33,552.36 and $28,652.78, from MC and MBS, respectively. These amounts include salary, bonuses, and a percentage of company profits while at MBS. Mrs. Kravette was employed by Sanmark-Stardust, Inc. and by Brooklyn Bow Co. during 1982. She earned total wages of $21,570.00. *122 On their 1982 Federal income tax return petitioners claimed a deduction for unreimbursed employee business expenses and home office expenses in the amount of $42,910.00. This deduction is broken down as follows: Expenses of Kravette
Travel and Entertainment
$22,855.00
Automobile Expense: Mileage (15,000 miles X $ .20)
$3,000.00
(61,300 miles X $ .11)
6,743.00
Parking
2,643.00
Tolls
1,615.00
Total Automobile Expense
14,001.00
Telephone
1,185.00
Office Supplies
476.00
Home Office Expense
3,750.00
Total Expenses (Kravette)
$42,267.00
Expenses of Mrs. Kravette
Automobile Expense
$643.00
Total Expenses (Mrs. Kravette)
643.00
Total Claimed Employee Business
Expenses and Home Office Expenses
$42,910.00
While Kravette worked for MBS he traveled to the MBS branches and accounts. His territory included the northeast section of the country and the metropolitan New York area. While Kravette worked for MC he worked in the business equipment division overseeing six salesmen and selling only through dealers, including MBS. His territory was quite large. It included the entire east coast from *123 Boston to Florida, the west coast, Texas, and Chicago. Kravette used his personally-owned automobile for his business trips while he worked for MBS. While he worked at MC, he had access to a leased car for a portion of the time and otherwise used his own car. Kravette frequently worked at home. He supervised several salespersons with whom he sometimes conferred by telephone in the evenings, while at home. He also performed small business duties at his home including typing and mailing materials. MC and MBS each had a general policy of reimbursing their employees for expenses incurred in the course of conducting corporate business. Neither company had a written policy or any company-wide guidelines in 1982. At both companies, a salesperson was required to submit his voucher to his direct supervisor for reimbursement. The approval of the voucher was a matter of discretion for each division head. There were no maximum caps set for any of the amounts to be claimed, but vouchers would be disapproved if the total claimed was too high, regardless of the reasonableness of individual items. If a voucher was disapproved, Kravette would resubmit it with fewer claimed expenses. *124 Kravette submitted travel vouchers and was reimbursed for expenses in the amount of $13,316.00 from MC. These reimbursed expenses were broken down into the following categories: Type of Expense
Amt. of Reimbursement
Mileage for personal car
$567.00 Travel and entertainment
9,830.00  Tolls and parking
1,092.00  Gas for leased car
975.00
Public transportation
563.00
Telephone
289.00
Total
$13,316.00    MC also reimbursed Kravette for expenses associated with the leased automobile when Kravette provided a receipt or other substantiation. During each month Mr. Kravette had use of the leased automobile, i.e., from April through December, 1982, $75.00 was deducted from his salary for his personal use of the car for commuting. MBS paid Kravette $300 per month for the automobile expenses he incurred while using his personal car for business. Although the company had a reimbursement policy similar to that of MC, Kravette chose not to submit any vouchers for amounts in excess of the $300.00 per month or request any reimbursement from MBS for any other business expenses he incurred. Kravette seeks to deduct unreimbursed travel and entertainment *125 expenses in the amount of $22,855.00. This amount represents meal expenses Kravette incurred while he was traveling away from home or while attending local business meetings or lunches, as well as business gifts and entertainment expenses. The $22,855.00 is an amount in addition to the $9,830.00 reimbursed by MC for travel and entertainment. The parties have stipulated that Kravette logged 40,072 business miles during 1982. This amount includes mileage logged while using his personal car for business purposes and while using the leased car. MC reimbursed Kravette for 18,068 of the 40,072 business miles, representing 15,233 miles logged in the leased car and 2,835 in his personal car. Kravette seeks a deduction for the 22,004 unreimbursed miles. Kravette also seeks deductions for parking and tolls in the amounts of $1,800.00 and $1,125.00, respectively. Also at issue is Kravette's claimed deduction in the amount of $1,185.00 for unreimbursed telephone expenses, including costs incurred while using his home telephone and pay phones while he was traveling. He also seeks to deduct $476.00 for office supplies, including postage, typing paper, carbon paper, and stamps he purchased *126 to use at home. Kravette also claims a home office deduction for the use of a portion of his home for business purposes. While Mrs. Kravette worked for Brooklyn Bow Co., she was responsible for overseeing several factories. She was sometimes required to use her personally-owned automobile to meet with salespersons or customers. Mrs. Kravette did not keep a diary or other records of her business travel. She received no reimbursement for her automobile expenses. Mrs. Kravette now seeks to deduct these expenses. OPINION (1) Ordinary and Necessary Expenses Section 162 permits a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. On their return, Mr. Kravette claimed $42,267.00 and Mrs. Kravette claimed $643.00 as section 162 expenses. Respondent disallowed these entire amounts on two grounds. First, at trial respondent attempted to show that all of the business expenses petitioners incurred were reimbursable by their respective employers, and are therefore not ordinary and necessary expenses of petitioners', but are expenses of their employers, Lucas v. Commissioner,79 T.C. 1, 6-7 (1982), *127 and cases cited therein. Second, respondent contends that petitioners failed to substantiate actual payment of the expenses, particularly as required by section 274(d). Petitioners offered proof that Kravette's expenses were not reimbursable. He testified that he often had to resubmit rejected vouchers with fewer claimed expenses. He believed his remaining unclaimed expenses were not reimbursable expenses but rather expenses he himself must bear to improve his earnings record. Kravette entered into evidence weekly travel expense reports for the months of February through December, which reflect reimbursement he received from MC. However, he offered no documentary evidence regarding the number of times his vouchers were returned as being too high. Kravette testified that when he worked for MBS, he did not submit vouchers, but "I absorbed that myself." He did, however, receive $300.00 a month from MBS to cover car expenses while he used his personal car for work. Kravette was a credible witness. Many of his business expenses appear to be reasonable, but not reimbursable, because of pressure to keep his total expenses down. He has shown through the vouchers in evidence that *128 he requested and received reimbursement from MC for some of the business expenses he was incurring. Although MC's policy was not defined, Kravette was in fact limited in the amount of reimbursement he could receive for the months of February through December. The type of expenses Kravette claimed, while employed by MC from February to December, were ordinary and necessary, i.e., appropriate, helpful, and customary. See Commissioner v. Tellier,383 U.S. 687, 689 (1966); Welch v. Helvering,290 U.S. 111 (1933). They resulted in additional commissions and contributed to his good sales record. These expenses were not gifts or other voluntary payments by petitioner to his employer, and he could not have received reimbursement if he had sought it. For the month of January, however, when Kravette was working at MBS, he did not seek reimbursement for the expenses he incurred. When an employer has a plan for reimbursing certain employee expenses, and the employee does not seek such reimbursement, the failure to claim the reimbursement results in disallowance of a deduction for such expenses. Heineman v. Commissioner,82 T.C. 538, 545 (1984). *129 Mrs. Kravette's expenses also fail the reimbursability test. Kravette testified that his wife was sometimes required to use her personal car to meet with sales people or customers when she was in charge of production at Brooklyn Bow. Yet petitioners presented no evidence to indicate the expenses were not reimbursable by Mrs. Kravette's employer. Petitioners have the burden of proving they are entitled to the claimed deductions and that the expenses did not properly belong to the employer. Welch v. Helvering,supra.By failing to seek reimbursement, Mrs. Kravette cannot convert expenses of her employer into her own expenses. Kennelly v. Commissioner,56 T.C. 936 (1971). Therefore, we cannot allow petitioners a deduction for these expenses. (2) Substantiation We have found the expenses Mr. Kravette incurred from February through December were his ordinary and necessary expenses rather than his employer's. Pursuant to sections 162 and 274(d), Mr. Kravette must substantiate these ordinary and necessary expenses. Travel and Entertainment
On his return Kravette claimed a deduction in the amount of $22,855 for unreimbursed travel and *130 entertainment expenses. The section 274(d) substantiation requirements apply to travel and entertainment expenses. Based on credit card receipts, respondent has conceded that Kravette has properly substantiated such expenses in the amount of $13,072. Approximately $1,089 of this substantial amount is attributable to his January employment at MBS, which we have disallowed. Petitioners are entitled to deduct the remainder of the agreed substantiated amount, or $11,983. Respondent has not conceded the substantiation of the remaining travel and entertainment expenses claimed. Section 274(d) provides that no deduction shall be allowed for any travel and entertainment expenses unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other items, (B) the time and place of the travel or entertainment, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of the persons entertained. Kravette and respondent each referred to a diary maintained by Kravette. He showed the diary to respondent. It indicated the amounts he spent, where and *131 when he spent them, and how the expenditures related to his business. Unfortunately, Kravette did not present the diary at trial, nor any other evidence to establish the requisite elements of substantiation. We believe he kept the diary, and that he did incur some of the claimed expenses. However, the requirements of section 274(d) are quite specific. Without the required substantiation, or other evidence to corroborate his own testimony, we cannot permit Kravette to take a deduction for these remaining travel and entertainment expenses. Therefore, the expenses as to which substantiation is still in issue, $9,783, will not be allowed. Mileage
On his income tax return, Kravette claimed a deduction for 76,300 miles using the standard mileage rate; however, both parties now agree that Kravette logged a total of 40,072 miles for business purposes during 1982. Since MC reimbursed Kravette for 18,068 miles, at issue are the 22,004 business miles not claimed or reported on Kravette's travel vouchers. Respondent contends that Kravette is not entitled to a deduction for this mileage because Kravette has not been able to establish how many of these miles were logged in the leased *132 car, and how many in his personal car. Kravette used the leased car from April through December. [3]
Section 274(d) applies to away from home business mileage and requires that taxpayers substantiate the amount, time, place, and business purpose of such expenses as a prerequisite for claiming such expenses as deductions. Smith v. Commissioner,80 T.C. 1165, 1172 (1983). The amount of the business travel may be substantiated by the use of a contemporaneous log of business travel, or by any reasonable means establishing the number of miles traveled, the date, the place, and the business purpose of such miles. Smith v. Commissioner,supra at 1171-1173. In the absence of evidence to the contrary, we assume all of Kravette's business mileage was logged while traveling away from home, requiring substantiation under section 274(d). He presented no contemporaneous log or any other evidence indicating when or where the miles were traveled. Without such substantiation we cannot permit Kravette any deduction for this mileage.
*133 Moreover, Kravette presented no evidence as to which car he used for the 22,004 business miles at issue. The standard mileage rate for employees who claim deductions for the cost of operating automobiles for business purposes applies only to personally-owned automobiles. Kozlowski v. Commissioner,T.C. Memo. 1977-81. Consequently, Kravette may not use the standard mileage rate for computing expenses of travel in the leased car. In the absence of evidence to the contrary, we assume all the business miles were driven in the leased car. Parking and Tolls
Respondent has agreed that Kravette has substantiated parking and and toll expenses in the amount of $2,925, and Kravette no longer claims any additional amounts. We have found these expenses to be ordinary and necessary. Therefore, Kravette will be allowed to deduct $2,925, less the $1,092 previously reimbursed by MC for parking and tolls. Kravette is allowed a deduction in the amount of $1,833 for parking and toll expenses. Telephone
Kravette claims he is entitled to a deduction of $1,185 for telephone expenses. Kravette testified that while he was away from home he used pay phones to call his *134 salespersons long distance. He arrived at the figure of $1,185 by estimating that he spent $4 or $5 a day on phone calls. These telephone expenses Mr. Kravette may have incurred while traveling away from home also come within the requirements of section 274(d). The regulations under that section do provide that in exceptional circumstances, by reason of the inherent nature of the situation in which an expenditure was made, when a taxpayer is unable to conform fully with the "adequate records" requirement or to conform fully with the "other sufficient evidence" requirement to corroborate his own testimony then other presented evidence "which possesses the highest degree of probative value possible under the circumstances" shall be considered to satisfy the substantiation requirements of section 274(d). Sec. 1.274-5(c)(4), Income Tax Regs. However, Kravette has not presented any corroborative evidence concerning his telephone expenses. In the absence of any such evidence, we cannot permit Kravette to deduct telephone expenses. See Dowell v. United States,522 F.2d 708, 716-717 (5th Cir. 1975). Office Supplies
Kravette contends he extended $476 for office *135 supplies he used at his home. He has presented no documentary evidence to substantiate this amount. We find Kravette's testimony persuasive that he did incur office expenses. However, we will only allow him to deduct $75.00 for office supplies under the Cohan rule. [4]
(3) Home Office Deduction Pursuant to section 280A, a taxpayer is not permitted to deduct any expenses attributable to the use of his home for business purposes except to the extent the expenses are attributable to the portion of the home exclusively used on a regular basis as (1) the principal place of business for any trade or business of the taxpayer or (2) a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business. Jackson v. Commissioner,76 T.C. 696 (1981). Kravette contends that it was necessary for him to have a home office because of his need to be in contact with salesmen who were often in a different time zone. He therefore made and received work-related telephone calls in the evening. However, MC provided *136 Kravette with an office for this purpose and it was for convenience that he carried on his work at his home. Kravette's home was not his principal place of business nor was it a place of business which was used by clients or customers in meeting or dealing with him in the normal course of business. See Frankel v. Commissioner,82 T.C. 318 (1984). Furthermore, Kravette has not demonstrated that a portion of his home was used exclusively for business. Kravette has therefore not met the requirements of section 280A and is not entitled to a home office deduction. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code as in effect during 1982.↩
2. Although Kravette could not recall the exact dates of his employment with each of these companies, the evidence indicates he began working for MC in February, 1982, and we so find. The disproportionately large wages from MBS are not adequately explained in the record, but may have been tied to bonuses for past performance and profit-sharing.↩
3. Kravette testified that he may have used his personal car during this time if the leased car was undergoing repairs.↩
4. Cohan v. Commissioner,39 F.2d 540↩ (2d Cir. 1930).