T.C. Memo. 2010-144

UNITED STATES TAX COURT

WILLARD MICHAEL CHRISTINE AND PATRICIA ETHEL BORGIA, Petitioners
<u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15410-08.                    Filed June 30, 2010.

        R determined a deficiency in income tax for Ps'
2005 taxable year on account of disallowed business
expense deductions.

        <u>Held</u>:  Although Ps established that H's author
activities were an existing trade or business engaged
in for profit, they failed to substantiate most of
their claimed deductions, and those expenses are
therefore nondeductible.

        <u>Held</u>:  Ps are not liable for a penalty under sec.
6673(a)(1), I.R.C.

Willard Michael Christine, pro se.

<u>Amy Long</u> and <u>Miles Friedman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a timely petition for redetermination of a $3,994 income tax deficiency that respondent determined for petitioners' 2005 tax year.  The issues for decision are:  (1) Whether petitioners are entitled to deduct unreimbursed employee business expenses of $9,876 for the 2005 tax year; (2) whether petitioners are entitled to deduct home office expenses of $11,235 for the 2005 tax year; and (3) whether the Court should impose a penalty on petitioners under section 6673(a)(1).[1]

FINDINGS OF FACT

Some of the facts have been stipulated by the parties.  The stipulations, with accompanying exhibits, are incorporated herein by this reference.  At the time the petition was filed, petitioners resided in California.

During 2005 Willard Christine was employed by the Los Angeles Times (L.A. Times) as a horse racing reporter.  In 2005 the L.A. Times reimbursed Mr. Christine for approximately $32,473.15 of employee expenses.[2]

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) of 1986, as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]This determination is based on records of the L.A. Times kept in the ordinary course of business for the 2005 tax year,
                                        (continued...)

Petitioners filed a joint Form 1040, U.S. Individual Income Tax Return, for the 2005 tax year.  On Schedule A, Itemized Deductions, petitioners claimed $9,876 for unreimbursed employee business expenses and $11,235 for home office expenses less $2,709 (2 percent of adjusted gross income).  During examination of their 2005 joint Federal income tax return, petitioners mailed respondent more than 700 pages of copied receipts, calendar pages, and account statements.  The March 28, 2008, notice of deficiency disallowed petitioners' $18,402 of claimed miscellaneous deductions.

A trial was held on June 16, 2009, in Los Angeles, California.  On January 8, 2010, respondent filed a motion to impose a penalty under section 6673.  On February 12, 2010, at the Court's direction, petitioners filed a response to respondent's motion.

OPINION

I.  Burden of Proof

As a general rule, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, pursuant

---

²(...continued)
including an expense report for Mr. Christine, consisting of approximately 80 pages of itemized and reimbursed expenses for the 2005 and 2006 tax years and "the Tribune Company American Express Travel & Entertainment Cardholder Agreement Form".

to section 7491(a)(1), the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue."  The burden will shift only if the taxpayer has, inter alia, complied with substantiation requirements pursuant to the Code and "cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews".  Sec. 7491(a)(2).  Petitioners did not argue that the burden should shift, and they failed to comply with the substantiation and cooperation requirements. Accordingly, the burden of proof remains on petitioners.

## II.  Unreimbursed Employee Expenses

### A.  General Rules

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Taxpayers must maintain records relating to their income and expenses and must prove their entitlement to all claimed deductions, credits, and expenses in controversy.  See sec. 6001; Rule 142(a); INDOPCO, Inc. v. Commissioner, supra at 84; Welch v. Helvering, supra at 115.

Pursuant to section 162(a), a taxpayer is entitled to deduct all of the ordinary and necessary unreimbursed business expenses paid or incurred during the taxable year in carrying on a trade

or business.  Lucas v. Commissioner, 79 T.C. 1, 6 (1982).
However, an employee cannot deduct such expenses to the extent
that the employee is entitled to reimbursement from his or her
employer for expenditures related to his or her status as an
employee.  Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir.
1986), affg. T.C. Memo. 1984-533; Lucas v. Commissioner, supra at
7.  Along with other miscellaneous itemized deductions,
unreimbursed employee expenses are subject to the two percent of
adjusted gross income limitation under section 67(a).

The taxpayer bears the burden of proving that claimed
expenses were ordinary and necessary as required by section 162.
In certain circumstances, the taxpayer must meet specific
substantiation requirements in addition to section 162.  See sec.
274.  To be "ordinary" the transaction which gives rise to the
expense must be of a common or frequent occurrence in the type of
business involved.  Deputy v. du Pont, 308 U.S. 488, 495 (1940).
To be "necessary" an expense must be "appropriate and helpful" to
the taxpayer's business.  Welch v. Helvering, supra at 113.
Additionally, the expenditure must be "directly connected with or
pertaining to the taxpayer's trade or business".  Sec. 1.162-
1(a), Income Tax Regs.

A claimed expense (other than those subjected to heightened
scrutiny under section 274) may be deductible even where the
taxpayer is unable to fully substantiate it.  There must,

however, be sufficient evidence in the record to provide a basis upon which an estimate may be made and to permit us to conclude that a deductible expense, rather than a nondeductible personal expense, was incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). But see Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). In these instances, the Court is permitted to make as close an approximation of the allowable expense as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, supra at 543-544.

Section 274(d) applies to: (1) Any traveling expense, including meals and lodging away from home; (2) entertainment, amusement, and recreational expenses; or (3) the use of "listed property", as defined in section 280F(d)(4), including personal computers. To deduct such expenses, the taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony: (1) The amount of the expenditure or use; (2) the time and place of the travel, entertainment, amusement, recreation, or use; (3) its business purpose; and in the case of entertainment, (4) the business

relationship to the taxpayer of each expenditure or use. Sec. 274(d).

To satisfy the adequate records requirement of section 274, a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use. Sec. 1.274-5T(c)(1) and (2), Temporary Income Tax Regs., 50 Fed. Reg. 46016, 46017 (Nov. 6, 1985). Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction "of the elements * * * of the expenditure or use must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra.

Petitioners presented to respondent hundreds of pages of receipts, bills, and account statements to substantiate unreimbursed employee expenses for 2005. Much of the information presented is illegible and unorganized. However, the claimed expenses can be separated into two groups: (1) Those relating to Mr. Christine's employment as an L.A. Times reporter; and (2) those relating to author activities Mr. Christine undertook in 2005.

The materials submitted to substantiate the claimed unreimbursed employee expenses relating to Mr. Christine's employment at the L.A. Times appear to fall into the following

categories:  Travel expenses, entertainment expenses, mileage expenses, and other miscellaenous expenses.

    B.    <u>L.A. Times Unreimbursed Employee Expenses</u>

    1.    <u>Travel Expenses</u>

Strict substantiation requirements of section 274(d) apply to travel expenses.  Petitioners presented various documentation relating to air travel, accommodations, car rentals, and meals and transportation expenses for L.A. Times business-related travel in 2005.  However, petitioners were also reimbursed by the L.A. Times over $30,000 for employee expenses for the 2005 tax year, most of which were travel related.  Upon careful examination of the record, it is unclear to the Court which expenses petitioners are claiming as deductions and which expenses they are acknowledging were reimbursed by the L.A. Times.

For example, petitioners included in the materials they submitted to substantiate unreimbursed employee expenses for 2005 a receipt from the Algonquin Hotel dated October 31, 2005, for total amount billed of $3,331.  This receipt relates to accommodation and telephone charges for the period October 21 to October 31, 2005.  Petitioners wrote on the receipt "Biz Breeders Cup".  However, the L.A. Times expense report for Mr. Christine for 2005 indicates that $3,331 was "paid to" Mr. Christine in relation to "lodging" for the Breeders Cup that ended on

October 31, 2005. Additionally, in the entry for "Breeders Cup", the L.A. Times expense report for Mr. Christine indicates that a further $3,209.08 was reimbursed to petitioners in relation to "airfare", "mileage", "meals", "car rental", "telephone", "other", "entertainment", "gifts", "parking/tolls", "taxi/bus/limo", and "tips". Yet the materials petitioners submitted include receipts related to Breeders Cup travel for tolls, meals, parking, car rental, entertainment, mileage, and taxicabs. Petitioners have not shown that any of the travel expenses they submitted in relation to Breeders Cup travel were not included in the expenses previously reimbursed by the L.A. Times.

The L.A. Times reimbursed Mr. Christine for similar travel expenses relating to 10 other races in 2005, including the Belmont Stakes, Del Mar, Hollywood Park, the Florida Derby and the Preakness. Yet petitioners included in the materials they submitted to substantiate unreimbursed employee expenses for 2005 receipts and statements relating to the same categories of expenses for these races as were reimbursed by the L.A. Times.

Mr. Christine testified during trial that he understands he cannot claim a deduction for expenses that were previously reimbursed by his employer, but from the record the Court cannot discern which expenses petitioners are claiming as unreimbursed. On the basis of the materials admitted into evidence, petitioners

are attempting to claim travel expenses for 2005 that the L.A. Times has previously reimbursed.

Mr. Christine testified at trial that he did not recall the dollar amount of the expenses that the L.A. Times reimbursed him for in 2005 and that he did not subtract this reimbursed amount from the total amount of his employee business expenses. Nevertheless, he was surprisingly able to determine the difference between the amount that he had claimed on his return and the amount that the L.A. Times had reimbursed him.

Employee expenses are not deductible if an employee is entitled to reimbursement from his or her employer for expenditures related to his or her status as an employee. Lucas v. Commissioner, 79 T.C. 1 at 7. Petitioners have failed to carry their burden of proving that any of the separately claimed travel expenses were not reimbursable by the L.A. Times or did not constitute personal expenses. The Court cannot determine from the material presented which travel expenses were reimbursed. Because petitioners have not shown that the claimed expenses were indeed unreimbursed and unreimbursable, we must deny all the travel expenses.

### 2. Entertainment Expenses

Section 274(d) requires the taxpayer to substantiate the amount, time, place, and business purpose of each entertainment expense, "by adequate records or by sufficient evidence

corroborating the taxpayer's own statement". <u>Campbell v. Commissioner</u>, 164 F.3d 1140, 1143 (8th Cir. 1999), affg. in part and remanding T.C. Memo. 1997-502. Petitioners submitted pages of receipts, bank statements, and credit card bills but did not provide a business purpose for any of the claimed expenses. On some of the submitted materials petitioners wrote the name of a particular race and in some instances, a person's name as well. Presumably the expense relates to the named race, but the Court cannot determine from the information provided why petitioners included various names next to each expense or in what way such person relates to the claimed expense. Petitioners did not testify as to a business purpose at trial, nor have they provided any additional information for any of the claimed entertainment expenses.

Petitioners were reimbursed by the L.A. Times for numerous "meals" and "entertainment" expenses for 2005. Petitioners have provided no evidence that the claimed entertainment expenses were not previously reimbursed or reimbursable. Petitioners did not carry their burden of properly substantiating any of the claimed unreimbursed entertainment expenses relating to Mr. Christine's L.A. Times employment. Accordingly, petitioners are not entitled to a deduction for any entertainment expenses.

3.  Mileage Expenses

The strict substantiation requirements of section 274(d) also apply to away-from-home business mileage expenses.  Smith v. Commissioner, 80 T.C. 1165, 1172 (1983).  The amount of the business travel may be substantiated by the use of a contemporaneous log or by any reasonable means establishing the number of miles traveled, the date, the place, and the business purpose of such miles.  Id.  Additionally, the amount for away-from-home business mileage can be determined on the basis of a mileage allowance.  The Commissioner has established mileage allowances deemed to substantiate the amount of the expense incurred operating a vehicle.  The standard mileage rates for 2005 are set forth in Rev. Proc. 2004-64, 2004-2 C.B. 998, and Announcement 2005-71, 2005-2 C.B. 714.

Mr. Christine does not own an automobile, and the mileage expenses claimed in 2005 are related to rental car usage.  Mr. Christine testified that he used the standard mileage rate for miles that he drove a rental car which he considered business miles that were not reimbursed.  The standard mileage rate for employees who claim deductions for the cost of operating automobiles for business purposes applies only to personally owned or leased automobiles.  Kravette v. Commissioner, T.C. Memo. 1987-124; Kozlowski v. Commissioner, T.C. Memo. 1977-81; Rev. Proc. 2004-64, sec. 4, 2004-2 C.B. at 900.  Consequently,

petitioners may not use the standard mileage rate for computing expenses of travel in rental cars.  Because petitioners did not provide alternative evidence to substantiate the mileage expenses, e.g., a contemporaneous log of business travel, petitioners are not entitled to a deduction for vehicle expenses.

### 4.   Laptop Expenses

Petitioners submitted approximately seven different expenses labeled "laptop".  It appears from the record that most of these expenses are for the purchase of computer software and/or computer accessories.  Expenses relating to the personal use of computers are subject to the strict substantiation requirements of section 274.  Hence, to deduct such expenses, the taxpayer must substantiate the amount of the expenditure, its business purpose, and the business relationship to the taxpayer of each expenditure or use.  Sec. 274(d).

Petitioners have not presented to the Court any information relating to claimed laptop expenses, other than receipts. Accordingly, petitioners have not met the substantiation requirements with regards to the laptop expenses and they are disallowed under section 274(d).

### 5.   Miscellaneous Expenses

Petitioners claimed miscellaneous L.A. Times unreimbursed employee expenses relating to dry cleaning, trade publications, and mailing expenses.  As previously stated, section 162(a)

authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  A trade or business expense is ordinary for purposes of section 162 if it is normal or customary within a particular trade, business, or industry and is necessary if it is appropriate and helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Deputy v. du Pont, 308 U.S. at 495.  In contrast, "personal, living, or family expenses" are generally nondeductible.  See sec. 262(a).

Petitioners have provided no evidence that dry cleaning is a normal or customary expense in the business of sports writing, nor have they shown that dry cleaning Mr. Christine's clothes, which were suitable for ordinary everyday wear, was appropriate or helpful for the pursuit of his business.  On the basis of the record, Mr. Christine's dry cleaning is properly classified as a personal expense and hence is not a deductible business expense under section 162.  See Coppin v. Commissioner, T.C. Memo. 2009-221; Boltinghouse v. Commissioner, T.C. Memo. 2007-324; Johnson v. Commissioner, T.C. Memo. 1982-2; Tilney v. Commissioner, a Memorandum Opinion of this Court dated Feb. 9, 1953.

Petitioners submitted expenses relating to various trade publications, including an expense for a subscription to the L.A. Times.  Taxpayers are entitled to deduct all ordinary and necessary unreimbursed and unreimbursable business expenses paid

or incurred during the taxable year in carrying on a trade or business. See sec. 162(a); Lucas v. Commissioner, 79 T.C. at 6.

Mr. Christine testified that the L.A. Times would provide him with a free paper if he drove in to its offices. Respondent claims that because Mr. Christine was eligible for a free paper via his status as an employee of the L.A. Times, he is not able to claim his subscription as an unreimbursed employee expense.

The L.A. Times offices are approximately 20 miles from petitioners' home. An employee cannot deduct expenses to the extent that the employee is entitled to reimbursement from his employer for expenditures related to his employment. Lucas v. Commissioner, supra at 7. However, it is not reasonable to expect Mr. Christine to drive 20 miles each way to obtain a free newspaper. Accordingly, the subscription to the L.A. Times is allowable as an unreimbursed employee expense under section 162. On the basis of the record, petitioners are entitled to unreimbursed employee expenses for trade publications in the following amounts for 2005: $252 for the L.A. Times subscription, $10 for the "CHRB Annual Report", $35.54 for the "Daily Racing Form", $155.28 for the New York Times, $38 for the "Daily Racing Form's Simulcast Weekly", $70 for "Derby Books", and $50.81 for the "Daily Racing Form", for a total of $611.63 of allowable deductions.

Petitioners also submitted various mailing expenses labeled "biz" for the 2005 tax year. Mr. Christine testified that the mailing expenses were business related to the L.A. Times. Respondent claims that because the L.A. Times would have paid for Mr. Christine's mailing expenses had he driven to their offices, he is not able to claim his mailing expenses as an unreimbursed employee expense.

As previously noted, the L.A. Times offices are approximately 20 miles from petitioners' home. Accordingly, it is not reasonable to expect Mr. Christine to drive 20 miles each way for the purposes of mailing. On the basis of the record, the Court finds that petitioners are entitled to a total of $156.98 for unreimbursed mailing expenses in 2005.

Petitioners also submitted two expenses relating to unreimbursed membership fees for 2005, one for the National Turf Writers Association and another for the Los Angeles Press Club. Membership in these organizations can be considered an ordinary business expense related to the profession of sports writing in Los Angeles. Accordingly, petitioners are entitled to a deduction for unreimbursed membership fees in the following amounts for 2005: $40 for membership in the National Turf Writers Association and $80 for membership in the Los Angeles Press Club.

C.   <u>Author Expenses</u>

Whether Mr. Christine's author expenses are deductible depends upon whether they are hobby expenses, startup expenses, or ordinary and necessary expenses of Mr. Christine's already active trade or business.

1.   <u>Section 183 "Hobby" Losses</u>

Section 183, which applies to activities engaged in by individuals, generally limits the deductions for an "activity not engaged in for profit" to the amount of gross income received from the activity.  Sec. 183(a) and (b).  Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."  Pursuant to the jurisprudence of the Court of Appeals for the Ninth Circuit, the court to which an appeal of this case would lie absent a stipulation to the contrary, an activity is engaged in for profit if the taxpayer's "predominant, primary or principal objective" in engaging in the activity was for profit.  <u>Wolf v. Commissioner</u>, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212.  In this context, the term "profit" denotes economic profit, independent of tax savings. <u>Id.</u>; <u>Antonides v. Commissioner</u>, 91 T.C. 686, 693-694 (1988), affd. 893 F.2d 656 (4th Cir. 1990).  Whether the requisite profit objective exists must be resolved on the basis of all surrounding

facts and circumstances. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. A taxpayer's profit objective need not be reasonable, but it must be bona fide. Golanty v. Commissioner, supra at 426.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine factors to consider in ascertaining a taxpayer's objective in engaging in an activity. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort spent by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. None of these factors is controlling in and of itself, and a decision as to a taxpayer's intent is not governed by a numerical preponderance of the factors. Golanty v. Commissioner, supra at 426; Allen v. Commissioner, 72 T.C. 28, 34 (1979); sec. 1.183-2(b), Income Tax Regs.

Taking into account the above factors and considering the record as a whole, the Court concludes that during 2005 Mr.

Christine had a bona fide intention to derive a profit from his author activities. In addition to Mr. Christine's testimony on this issue, which the Court found to be credible and forthright, the evidence in the record shows an intent and effort by Mr. Christine to engage in and continue in the writing field with the purpose of producing supplemental income and a livelihood.

We first look to the manner in which Mr. Christine carried on the activities. Mr. Christine managed some aspects of this activities in a businesslike fashion. While Mr. Christine did not keep a separate checking account or a well-organized set of books, he did attempt to keep an accounting, albeit difficult to decipher, of the expenses he incurred to research his books, including bills, receipts, and schedules for his expenses. In sum, although Mr. Christine could and should have been more organized in keeping track of his expenditures, his efforts to make a financial success of his writing activity show a profit objective. We conclude this factor is neutral.

With regard to the second factor, Mr. Christine is a writer by trade and has been actively engaged in the writing business for approximately 60 years. He wrote a book in 1972 that earned him approximately $10,000 in royalties, as well as some sports anthology books in later years. Mr. Christine also engaged an "agent" of sorts to assist him in publishing his second book. We

conclude there is no question that Mr. Christine has the requisite expertise to satisfy this factor.

The third factor focuses on the time and effort expended by the taxpayer in carrying on the activity. There is little doubt that, during the years at issue, Mr. Christine spent numerous hours per week on his writing activity. Respondent emphasizes that Mr. Christine worked full time for the L.A. Times during 2005 and for the previous 22 years, suggesting that in some manner Mr. Christine's book-writing could not rise to the level of a trade or business because he also had a full-time job.

We disagree with respondent. Mr. Christine's employment at the L.A. Times does not preclude the possibility that his writing activity constituted a separate trade or business. We have recognized that a taxpayer may engage in more than one trade or business at any one time. See Gestrich v. Commissioner, 74 T.C. 525, 529 (1980), affd. without published opinion 681 F.2d 805 (3d Cir. 1982); Sherman v. Commissioner, 16 T.C. 332, 337 (1951).

The fourth factor takes into consideration the expectation that assets used in the activity will appreciate in value. Because there are few, if any, fixed assets involved in writing, this factor is irrelevant.

The fifth factor, the success of the taxpayer in carrying on other similar or dissimilar activities, is easily met given Mr. Christine's engagement as a writer for nearly 60 years. Writing

has been his livelihood and has supported him and his family for a "lifetime".

The next two factors, the taxpayer's history of income or losses with respect to the activity and the amount of occasional profits, are examined in tandem. Mr. Christine was approached by Bay Meadows racetrack in 2005 to write a book on the history of the racetrack before it went out of business. There was no written contract, but according to Mr. Christine "it was a handshake deal". Mr. Christine then went on to research and write for approximately the next 4 years. He eventually sold the book to the Bay Meadows racetrack for approximately $35,000, receiving his first payment of $22,500 in January 2009. Additionally, Mr. Christine has made approximately $10,000 in royalty income from his book-writing activity in prior years. Given Mr. Christine's history of income and loss from book-writing, the Court finds that these factors are met and strongly support petitioners' position.

Respondent asserts that with regard to the next factor, the financial status of the taxpayer, petitioners' profit objective is suspect because Mr. Christine's writing activity resulted in a loss that generated tax benefits in 2005. Petitioners did not realize any income from the book-writing activity until 2009 and were able to use book-writing losses in 2005 to shelter their other income. However, we do not believe that petitioners'

income was so high as to make tax savings their primary objective.[3] Rather, we find it clear from Mr. Christine's testimony and from the objective evidence that he was a writer and a book author who desired financial success and intended to make a profit from his book-writing activity.

The last factor looks to elements of personal pleasure or recreation. Writing has been Mr. Christine's occupation for nearly 60 years. It is apparent to the Court that Mr. Christine does not merely engage in writing activity for pleasure, but rather, it is his livelihood. The fact that Mr. Christine may enjoy writing does not change the result that he is in the trade or business of writing. See <u>Jackson v. Commissioner</u>, 59 T.C. 312, 317 (1972).

The Court is convinced that Mr. Christine engaged in his book-writing activity during 2005 with a profit objective.

### 2.    Startup Expenditures

Pursuant to section 195(a), startup expenditures are not generally deductible. However, at the election of the taxpayer, startup expenditures may be treated as deferred expenses and amortized over at least a 60-month period beginning in the month in which the active trade or business begins. See sec. 195(b)(1), (c). Section 195(c) provides in part:

---

[3]Petitioners reported approximately $85,000 in income for 2005.

(1) Startup expenditures.--The term "startup expenditure" means any amount--

    (A)  paid or incurred in connection with--

        (i)  investigating the creation or acquisition of an active trade or business, or

        (ii)  creating an active trade or business, or

        (iii)  any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business, and

    (B)  which, if paid or incurred in connection with the operation of an existing active trade or business (in the same field as the trade or business referred to in subparagraph (A)), would be allowable as a deduction for the taxable year in which paid or incurred.

The taxpayer must elect to amortize his or her startup expenditures.  Sec. 195(d).

The critical distinction in this area is between expenses incurred in connection with an existing trade or business, which are deductible under section 162(a), and expenses incurred in establishing a new business, which are not currently deductible. Respondent contends that book writing was a new trade or business for Mr. Christine and any expenses associated with such activity should be treated as startup expenses and amortized in accordance with section 195.  As previously determined, Mr. Christine was involved in the active trade or business of writing with a profit objective.  Given Mr. Christine's earlier book writing activity dating back to 1972, the Court does not make a distinction

between his book-writing activity and his other for-profit journalism activity. Rather, we consider them as part of the same active trade or business and consider the expenses deductible, subject to the constraints of sections 162 and 274. See Colo. Springs Natl. Bank v. United States, 505 F.2d 1185, 1190 (10th Cir. 1974).

Petitioners claimed various expenses relating to book-writing activity for 2005, including travel, entertainment, research, and storage expenses.

The book-writing travel and entertainment expenses petitioners claimed consist mostly of hotel and meal charges. These expenses are subject to the strict substantiation requirements of section 274(d).

In some instances for meal expenses, petitioners have written a name on the receipt. However, petitioners did not provide the Court with adequate records or testimony explaining the amounts of the expenditures, the time and place of the travel or entertainment, the business purpose of such travel or entertainment, or the business relationship to petitioners of each expenditure. Accordingly, petitioners have failed to carry their burden of proof and are not entitled to a deduction for any travel or entertainment expenses relating to book-writing activity for 2005.

Research expenses attributable to purchasing books or other intangible property are ordinary and necessary in the context of book writing. Accordingly, from the record, petitioners are allowed a deduction in their 2005 taxable year of $428.83 for research expenses related to book writing.[4]

Mr. Christine testified as to offsite storage expenses for 2005 of approximately $90 per month. However, the storage expenses were not documented anywhere in the written materials petitioners submitted. Accordingly, the Court will not allow a deduction for storage expenses.

III. Home Office Expenses

Section 280A generally prohibits the deduction of the costs of a taxpayer's residence. Section 280A(c)(1), however, permits a deduction for the allocable portion of a residence that is regularly and exclusively used as a taxpayer's principal place of business or as a place of business which is used by customers in the normal course of the taxpayer's trade or business. In deciding whether a residence is the principal place of business, it must be compared to all of the other places where business is transacted. See Commissioner v. Soliman, 506 U.S. 168, 174 (1993). A deduction is allowed only when the residence is the most important or significant place for the business. The two

---

[4]This amount was calculated on the basis of research-related receipts petitioners submitted.

primary considerations are the relative importance of the activities performed at each business location and the time spent at each place.  See id. at 175.  The relative importance of business activities engaged in at the office in the home "may be substantially outweighed by business activities engaged in at another location."  See Strohmaier v. Commissioner, 113 T.C. 106, 112 (1999).

In the case of a taxpayer who is an employee, the home office must be for the convenience of the employer; it cannot just be a place in which the employee chooses to do some of his work.  Sec. 280A(c)(1) (flush language); Frankel v. Commissioner, 82 T.C. 318, 323, 326 (1984).  It must be used exclusively for the employer's work and not for personal use.  Sec. 280A(c)(1); Cadwallader v. Commissioner, 919 F.2d 1273, 1275 (7th Cir. 1990), affg. T.C. Memo. 1989-356.  If the conditions in section 280A are satisfied, then "even if the home office is not a separate structure there is a reasonable probability that the taxpayer's house is actually larger than it would be if he did not imperatively require a home office."  Cadwallader v. Commissioner, supra at 1275.  Further, the "added expense of the office is incurred solely to produce income; it yields no, or at least very little, personal utility."  Id.  A taxpayer may have only one principal place of business for each business in which he is engaged.  See Curphey v. Commissioner, 73 T.C. 766, 776

(1980).  To determine the principal place of business within the meaning of section 280A(c)(1)(A) the Court must ascertain the "focal point" of a taxpayer's business activities.  Jackson v. Commissioner, 76 T.C. 696, 700 (1981); Baie v. Commissioner, 74 T.C. 105, 109 (1980).

When Mr. Christine first began his employment with the L.A. Times, they provided him with a desk and chair; but a few years later he came into the office to find his chair was missing.  Mr. Christine explained that there are approximately 60 sports journalists working for the L.A. Times and if "as many as half of us had ever shown up on the same day we would have been working from one another's laps".  The fact that the employer provides inadequate office facilities is not dispositive of whether a home office is for the convenience of the employer.  See Dudley v. Commissioner, T.C. Memo. 1987-607, affd. without published opinion 860 F.2d 1078 (6th Cir. 1988).  However, it is unclear from the record whether Mr. Christine was able to conduct his book-writing activity at the L.A. Times.  Therefore, the Court must look to whether Mr. Christine's home office is his principal place of business and vital to his profession as a writer.

Mr. Christine testified that out of the six rooms in his home, he used one of the bedrooms and the garage exclusively for his writing, with the latter being used for storage. Petitioners calculated their home office expenses by computing one-third of

the total rent, insurance, and utilities and adding to that figure all of the television expenses, because they subscribed to two horse-racing channels.

Mr. Christine testified that he wrote stories for the L.A. Times from his home, press boxes, hotel rooms or on location, but he did not testify as to the specific amount of time he spent writing in each location as compared to writing in his home. Additionally, during 2005 Mr. Christine was engaged in the business of writing nonfiction and historical fiction anthologies, as well as sports writing for the L.A. Times. However, the record does not show how much time Mr. Christine spent on each respective activity.

We question the accuracy of petitioners' calculations in computing their home office deduction. They included in their estimate one-third of all their home expenses but provided no evidence to the Court that this is an accurate reflection of the costs of maintaining their home office. Second, petitioners did not explain to the Court why a home office was vital to Mr. Christine's profession as a writer or that it was the "focal point" of his business. From the record, it is apparent Mr. Christine spent a significant amount of his time traveling and writing stories from locations other than his home. The Court cannot conclude that petitioners' residence was the most important or significant place for Mr. Christine's business,

given that the record contains little to no information regarding how much time Mr. Christine spent writing in his home versus other locations.

Although it might have been inadequate, the L.A. Times did provide Mr. Christine with an office. Additionally, on the basis of the record, the Court cannot conduct an accurate comparison of the time Mr. Christine spent writing at his home relative to the time he spent working elsewhere or determine that a home office was vital to his profession. Accordingly, the Court finds that petitioners failed to meet the requirements of section 280A(c)(1)(A) and are not entitled to a deduction for the expenses of maintaining a home office.

IV. Section 6673 Penalty

Section 6673(a)(1) authorizes the Tax Court to impose a penalty not in excess of $25,000 on a taxpayer for proceedings instituted primarily for delay or in which the taxpayer's position is frivolous or groundless. "A position maintained by the taxpayer is 'frivolous' where it is 'contrary to established law and unsupported by a reasoned, colorable argument for change in the law.'" Williams v. Commissioner, 114 T.C. 136, 144 (2000) (quoting Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986)).

Courts generally impose section 6673(a)(1) penalties in cases in which the taxpayer's lack of good faith was evident.

- 30 -

See <u>May v. Commissioner</u>, 752 F.2d 1301, 1307 (8th Cir. 1985).

For example, in a number of cases the Court has imposed a section

6673 penalty against taxpayers who have filed successive

petitions raising the same arguments, even though the arguments

had been rejected in the prior suits and the taxpayers informed

that the arguments were frivolous.[5]  In other cases, the Court

has assessed a section 6673 penalty after finding that the

taxpayer had knowledge that the claim was frivolous and had

asserted it merely to delay payment of taxes, whether actual

knowledge[6] or constructive knowledge that the claim was

frivolous.[7]

---

[5]See <u>Lukovsky v. Commissioner</u>, 734 F.2d 1320 (8th Cir. 1984)
(two prior suits); <u>Coulter v. Commissioner</u>, 82 T.C. 580 (1984)
(one prior suit); <u>Grimes v. Commissioner</u>, 82 T.C. 235 (1984) (one
prior suit); <u>Sydnes v. Commissioner</u>, 74 T.C. 864 (1980), affd.
647 F.2d 813 (8th Cir. 1981) (two prior suits).

[6]See, e.g., <u>Beard v. Commissioner</u>, 82 T.C. 766 (1984)
(taxpayer admitted he had studied cases, statutes, and
regulations pertaining to Federal income taxes and that he knew
the theory on which he based his claim had been rejected as
frivolous), affd. 793 F.2d 139 (6th Cir. 1986); <u>Wilkinson v.
Commissioner</u>, 71 T.C. 633 (1979) (Commissioner sent copies of
opinions which had rejected taxpayer's contentions as frivolous
and taxpayer admitted to having read them); <u>Vickers v.
Commissioner</u>, T.C. Memo. 1983-429 (Commissioner advised taxpayers
in deficiency notice that their claim had no legal basis);
<u>Stamper v. Commissioner</u>, T.C. Memo. 1983-248 (taxpayer had been
advised in three previous years that his claim was frivolous and
Commissioner advised him in deficiency notice that his position
had been repeatedly rejected as frivolous and cited, in the
notice, those cases to taxpayer).

[7]See, e.g., <u>Abrams v. Commissioner</u>, 82 T.C. 403 (1984);
<u>Manley v. Commissioner</u>, T.C. Memo. 1983-558 (counsel had
(continued...)

On January 8, 2010, respondent moved the Court to penalize petitioners under section 6673(a)(1).  Respondent contends that petitioners have maintained proceedings in this case primarily for delay and that their position is frivolous or groundless.  Respondent cites petitioners' unreasonable failure to pursue available administrative remedies as grounds for a section 6673(a) penalty.  Respondent also points to petitioners' refusal to respond to requests to provide information relating to reimbursement policies of Mr. Christine's employer.  During a conference with the Internal Revenue Service on May 20, 2009, Mr. Christine admitted that he was making the Government "jump through hoops".

Petitioners should have been more organized with regard to substantiation for their claimed expenses, but the Court does not agree with respondent that petitioners' conduct warrants a penalty under section 6673(a)(1).  Section 6673(a)(1) is reserved for extreme cases, as mentioned above.  We find that petitioners took their position in good faith and with reasonable cause and hence, their claims cannot be classified as frivolous or primarily for the cause of delay.  Therefore, we shall exercise great restraint and shall not at this time impose a penalty under section 6673(a)(1).  Petitioners are warned, however, that we

---

[7](...continued)
previously represented another taxpayer raising same claim in which argument had been rejected as frivolous).

shall not be so inclined should they again advance before the Court arguments, such as those advanced in this case, and not provide sufficient evidence to sustain them.

V. Conclusion

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are merit less, moot, or irrelevant.

To reflect the foregoing and concessions by both parties,

An appropriate order will be issued, and decision will be entered under Rule 155.